UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

  v.             Case No. 22-CR-38

JAMES T. AMBROSIUS,

    Defendant.

## DECISION AND ORDER ON RESTITUTION

On March 2, 2022, Defendant James T. Ambrosius pleaded guilty to three counts of Arson of a Building, contrary to 18 U.S.C. § 844(i). On July 13, 2022, Ambrosius was sentenced to 180 months imprisonment as to each count, to be served concurrently, to be followed by 3 years of supervised release. Under the terms of the Plea Agreement, Ambrosius agreed to pay restitution for the three charged arson offenses as well as other uncharged offenses set forth in the agreement. Because the total amount of the losses was still in dispute at the time of sentencing, the final determination on restitution was held open to allow counsel to gather additional information on losses and attempt to reach an agreement on final restitution amounts. Judgment was entered on July 18, 2022. An Amended Judgment was entered on August 1, 2022, pursuant to Rule 35(a) of the Federal Rules of Criminal Procedure, to correctly reflect the court's order regarding GPS monitoring during Ambrosius' term of supervised release.

On October 4, 2022, counsel filed a joint request seeking an extension of time for determination of restitution. The request was granted. On November 17, 2022, the Government filed its statement on restitution (Dkt. No. 34), noting that, although the parties were in agreement

as to the majority of the restitution claims, a dispute requiring the court's determination remained as to several of the claims relating to the fire at the Diederich Farm. Ambrosius filed his reply (Dkt. No. 35) on November 18, 2022, setting forth his objection to the disputed claims. Having set forth their respective positions, the issue is ripe for determination by the court.

As the Government noted, most of the amounts claimed as restitution are not in dispute. The parties are in agreement as to claims related to three of the four fires for which restitution has been sought. The parties also agree as to certain claims relating to the fourth fire at the Dan Diederich Farm at 521 Fernando Drive. The amounts that remain in dispute, all arising out of the fire at the Diederich Farm, consist of $800,000 for costs of caring for surviving cows at alternative locations after the fire; $13,000 for lease of a construction trailer for employees for eating meals and changing clothes; and $7,674.41 in lost wages to Dr. Sarah Diederich resulting from a two-week leave of absence from her job as a veterinarian to assist with cleanup and other farm related duties after the fire.

Under the Mandatory Victim Restitution Act (MVRA), 18 U.S.C. § 3663A, the court must order restitution to the victim of the crimes committed by Ambrosius. "[I]n the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense," the court is to "order the defendant to return the property to the owner or, if that is infeasible, to pay the owner (the victim) an amount equal to the loss of value of the property." § 3663A(b)(1). Unfortunately for victims of such crimes, the "measure of relief is less generous than common law damages . . . ." *United States v. Scott*, 405 F.3d 615, 618 (7th Cir. 2005). "[I]t does not extend to consequences beyond the diminution of the value of the property stolen or damaged—consequences that could easily exceed that diminution." *Id.* (citations omitted); *see also United States v. George*, 403 F.3d 470, 474 (7th Cir. 2005) ("'Loss' means direct injury, not consequential damages."); *United States*

*v. Seward*, 272 F.3d 831, 839 (7th Cir. 2001) ("In calculating . . . the actual loss amount for restitution [under the MVRA], the district court should include in the calculation all direct damages, but not include consequential or incidental damages.").

Ambrosius contends that he cannot be ordered to pay the disputed amounts relating to the fire at the Diederich Farm because those amounts—costs of care for surviving animals at alternative locations, lease payments for a construction trailer for employee meals and changing clothes, and lost income for Dr. Diederich—constitute consequential damages, as opposed to direct injury to the property he set afire. The issue is largely academic since even the amounts that are not in dispute vastly exceed any amount that Ambrosius has, or is likely to have, the earning capacity to pay once he completes his fifteen-year prison sentence. Nevertheless, the court is obligated to determine the amount of restitution he is legally obligated to pay.

Distinguishing between direct and consequential damages is not always easy. The Seventh Circuit has suggested that "[f]ocusing on the difference between the damage to the victim's property and other losses that the victim might sustain creates a more precise line between criminal restitution and common law damages than the more common distinction suggested in the cases between 'direct' and 'consequential' damages." *Scott*, 405 F.3d at 619. The court offered the following scenario as an example to show how such a focus might clarify the distinction: "If A tortiously damages B's factory, the cost of repairing the factory is direct damages; B's loss of business while the factory is shut down awaiting repairs is consequential damages." *Id.* Explaining further, the court stated, "The former would be recoverable in a criminal prosecution, the latter not. In our preferred terminology, the first type of damage to the factory impairs the value of B's property; the second injures B." *Id.* at 620.

3

Applying the same analysis here, I conclude that the disputed amounts constitute consequential damages and thus are not among the damages the court can legally order Ambrosius to pay as restitution under § 3663A. The cost of debris removal and construction of the new barn are the direct damages that Ambrosius must be ordered to pay. These amounts are not in dispute. The cost of caring for the surviving animals in alternative locations, however, as well as the lease payments for the construction trailer and lost income for Dr. Diederich, are injuries to the Diederichs. As additional expenses the Diederichs have incurred due to the loss of their property, these amounts are more akin to the loss of income that the owner of the factory incurred in the example described above. Those expenses are therefore not recoverable in this criminal prosecution.

Restitution is therefore set at a total amount of $4,519,811.98, which is the sum of the undisputed amounts. The specific amounts due the respective payees are as follows:

1. Dedicated Inc. claims involving fire at 3700 Elm View Rd.

   National Fire and Marine Insurance Company—$2,950,926.00
   Josh Hintz deductible—$15,000.00

2. Mike/Louise Ambrosius claims involving fire at 630 Orlando Dr.

   American Family Insurance—$275,866.05
   Louise Ambrosius—$134,057.55

3. David Lewis claims involving fire at 365 Triangle Dr.

   McMillan Warner Mutual Insurance—$37,581.82
   David Lewis deductible—$2,500.00

4. Diederich Farm claims involving fire at 521 Fernando Dr.

   Hasting Mutual Insurance Company—$507,335.56
   Diederich Farm (uninsured amounts)—$596,545.00

4

The Clerk is directed to enter an amended judgment of conviction that includes an order for payment of restitution as set forth above. Restitution payments made by the defendant are to be directed in the first instance to the victims on a *pro rata* basis and only secondarily to their insurers.

**SO ORDERED** at Green Bay, Wisconsin this 20th day of December, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge